UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

HILLMAN LUMBER PRODUCTS, INC.        CIVIL ACTION NO. 06-1204

versus                               JUDGE HICKS

WEBSTER MANUFACTURING, INC.,         MAGISTRATE JUDGE HORNSBY
ET AL.

## REPORT AND RECOMMENDATION

**Introduction**

Hillman Lumber Products, Inc. ("Plaintiff") obtained a money judgment from a Michigan state court. Plaintiff later filed this civil action against the judgment debtor(s) and several companies and individuals associated with the debtor(s). Plaintiff asserts that Defendants have engaged in an elaborate shell game in an effort to hide the assets of the judgment debtor(s).

Several of the defendants filed a Motion to Dismiss (Doc. 20). Plaintiff argued in its opposition that it was asserting a number of claims that were not pleaded with clarity in the complaint. The undersigned directed Plaintiff to come forward and plead, with clarity and specificity, its best case against all Defendants. Doc. 39. Plaintiff responded with a Supplemental and Amending Complaint (Doc. 42). All Defendants then filed a Motion to Dismiss (Doc. 46) that is now before the court.

**Rule 12(b)(6) Standards**

Federal Rule of Civil Procedure 8(a)(2) merely requires that a plaintiff recite a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 122 S.Ct. 992 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id.

When a complaint is attacked with a Rule 12(b)(6) motion, the court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S.Ct. 99, 101-02 (1957). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. Lowrey v. Texas A&M Univ. System, 117 F.3d 242, 247 (5th Cir. 1997).

It is not necessary for a plaintiff to plead each element of a claim. General Electric Capital Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005). The pleading need only make it possible for an inference to be drawn that the elements exist. Walker v. South Central Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990).

When fraud is alleged, Federal Rule of Civil Procedure 9(b) imposes a greater standard. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Id. "What constitutes 'particularity' will

necessarily differ with the facts of each case." Benchmark Electronics, Inc. v. J. M. Huber

Corp., 343 F.3d 719, 724 (5th Cir. 2003), quoting Guidry v. Bank of LaPlace, 954 F.2d 278,

288 (5th Cir. 1992).  The difference from case to case stems from the fact that fraud may

arise by statements, actions or omissions, and the allegations required with respect to each

of those varieties of fraudulent conduct are different.  But, no matter the circumstances, the

essence of Rule 9(b) is a requirement that the "who, what, when, where and how" of the

alleged fraud be laid out.  Benchmark Electronics, Inc., 343 F.3d at 724.

**The Allegations**

A Michigan state court, following a jury trial, entered a judgment of more than

$344,000 in favor of Plaintiff and against Webster Manufacturing, Inc. ("WMI") d/b/a

Morgan Saw Company ("MSC").  Supplemental and Amending Complaint ("Complaint"),

Doc. 42, ¶¶  29 & 30.  Plaintiff alleges, and a copy of the judgment attached to Doc. 20

reflects, that the Michigan judgment was entered "against Defendant, Webster

Manufacturing, Inc., d/b/a Morgan Saw, in the sum of ... ."  Plaintiff alleges that it is the

judgment creditor of both WMI and a Louisiana corporation called Morgan Saw Company,

Inc. Complaint, ¶ 7.

Plaintiff obtained an order in a Webster Parish, Louisiana court that made the

Michigan judgment executory in Louisiana.  Plaintiff commenced bank garnishments, but

the judgment debtors had already removed substantial monies from their accounts into other

accounts under the names of Ark-La-Tex Mill Supply, Inc. ("ALTMS"), Webster Lumber

Corporation ("WLC") and "the defendants Morgan."  ¶¶ 32-37.  ALTMS and WLC are named defendants.  The "defendants Morgan" reference is used by Plaintiff to (apparently) describe individual defendants Gary Morgan, Marsha Morgan, Mark Morgan and Michael Morgan.

Plaintiff alleges that MSC was not only a judgment debtor but that it was also operated as a single business enterprise with WMI.  The two companies have identical ownership, the same directors and officers, unified administrative control, and are treated the same in operations, though nominal separation exists on certain tax records.  ¶¶ 8-12.  WMI used the "Morgan Saw Company" name to market for business and label its machinery.  MSC existed before WMI, but after a judgment (not the one that triggered this case) against MSC defendants Morgan created WMI and shifted the assets of MSC to WMI.  WMI continued thereafter to use the "Morgan Saw Company" name to do business.  The two entities shared employees, shared facilities, used centralized accounting, and failed to comply with corporate formalities.  There were undocumented transfers of funds between the entities and their shareholders.  ¶¶ 8-28.

Plaintiff, in addition to attempts to garnish bank accounts, obtained a writ and had the sheriff serve notice of seizure of the movable and immovable property at the principal business location of WMI and MSC.  On that same day, ALTMS filed in the collection proceeding a petition of intervention and request for injunctive relief.  ALTMS alleged that it had purchased the assets of judgment debtors MSC and WMI.  The state court judge denied

the request for injunction, and counsel for Plaintiff took into his possession numerous filing cabinets filled with financial and business records of WMI and MSC.  ¶¶ 38-43.

Among the seized documents were some regarding ALTMS.  The documents show that ALTMS "was created for the sole purpose of defrauding Plaintiff, attempting to avoid the judgment" obtained in Michigan.  ALTMS was "created by defendants Morgan at the time the Michigan judgment was entered."  Business and financial records show that ALTMS "is a contrived entity for the sole purpose of attempting to convey assets to remove the assets from the reach of the plaintiff" and "to increase the insolvency of both WMI and MSC."  All of the entities, WMI, MSC, WLC and ALTMS, are owned and operated by Gary, Marsha, Mark and Michael Morgan.  ¶¶ 44-47.

The purported sale of assets of the judgment debtors to ALTMS is a sham. Furthermore, the defendants Morgan began invoicing the sale of the judgment debtors' work product under the name of ALTMS before ALTMS even existed.  ¶¶ 48-50.

After the Michigan trial, Gary Morgan advised Plaintiff and its counsel that he would obstruct any effort to satisfy the judgment in Louisiana, where all of the assets of the judgment debtors (WMI and MSC) were located.  Part of that obstruction was the transfer of the assets of WMI and MSC to ALTMS in exchange for ALTMS assuming several small debts owed a bank, which totaled around $100,000.  Gary Morgan is a stockholder in all three entities, and he is listed in the records of the Secretary of State as an officer, director and agent for the entities. ¶¶ 60-64

Invoices were issued under the name ALTMS beginning in February 2006 for sales and services rendered by the judgment debtors.  ALTMS also began depositing monies earned by the judgment debtors into a new account even though (1) ALTMS had not yet been created by a filing with the Secretary of State, and (2) the "bogus" bill of sale that purportedly transferred the assets of the judgment debtors to ALTMS had not yet been executed.  ¶¶ 65-68.

The judgment debtors, WMI and MSC, are the rightful owners of numerous industrial saw machines, tools, monies, planes, race cars, buildings, land and other assets that were lawfully seized on July 13, 2006.   Defendants have, since the seizure, removed and concealed assets that were catalogued and recorded by Plaintiff's counsel.  The items allegedly sold by WMI/MSC to ALTMS have remained in the possession of the Morgans, who then deposited the proceeds in accounts beyond the reach of Plaintiff.  ¶¶ 69-72.

**Revocatory Action**

Count one of the complaint is a revocatory action against all named defendants.  An obligee such as Plaintiff has a right to annul an act of his obligor if the act was made or effected after the right of the obligee arose and that causes or increases the obligor's insolvency.  La. Civ. Code Art. 2036; Parish National Bank v. Wilks, 923 So.2d 8, 15 (La. App. 1st Cir. 2005).  Plaintiff seeks to use this claim to annul every transfer by WMI or MSC that occurred after Plaintiff's rights arose.  In addition to the above allegations, Plaintiffs add that "Defendants Morgan" are shareholders in the two companies and took illegal and

excessive distributions and dispossessed, re-titled and concealed numerous assets of the companies in an effort to increase the company's insolvency.

Movants concede that Plaintiff has pleaded a revocatory action with respect to the transaction between WMI and ALTMS, but they suggest that any other claims should be dismissed because Plaintiff did not identify particular transactions or give adequate detail with respect to the alleged acts of the several individual defendants.

The comments under Article 2036 state that the 1984 revision abandoned the notion of fraud contained in earlier articles. They add that the requirement of a revocatory action may be satisfied even by an act that is done negligently. The particularity requirements of F.R.C.P. 9(b) do not apply to this claim. Plaintiff's allegations, even with respect to the individual defendants, are sufficient to afford notice to all defendants of the nature of the revocatory claims against them. This claim should survive Rule 12(b)(6) scrutiny. Defendants may explore the underlying details of the claim through discovery.

**Fraud**

Count two of the complaint asserts a claim of fraud against all defendants. In addition to the allegations summarized above, Plaintiff adds allegations that the collective defendants have taken steps to illegally distribute money and assets of WMI and MSC so as to cause the appearance that the companies are insolvent. The collective defendants are alleged to have been involved in the creation of ALTMS, a sham entity, to help effect the transfer of all assets from WMI and MSC. Complaint, ¶¶ 79-82.

Fraud, along with matters such as error or duress, is a vice of consent defined in La. Civ. Code art. 1953.  The Article provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction." Defendants ask for dismissal of this count on the grounds that the complaint lacks particular allegations regarding any misrepresentation or suppression of the truth by any defendant. Defendants also complain of the lack of detail as to which defendant allegedly did what.

Plaintiff complains that Defendants attempt to limit the definition of fraud to Article 1953, which deals with fraud as a vice of consent to a contract.  Plaintiff does not, however, cite Louisiana or Fifth Circuit authority for the proposition that there is a cause of action known as "fraud" that would permit Plaintiff to recover against the named defendants under the circumstances described in the complaint.

Plaintiff correctly avoids reliance on Article 1953, which pertains only to parties to a contract.  Newport Ltd. v. Sears, Roebuck & Co., 6 F.3d 1058, 1067 (5th Cir. 1993). The cause of action that Plaintiff perhaps wishes to invoke, but cites no authority for, is delictual fraud pursuant to La. Civ. Code Art. 2315.  The elements of that cause of action are "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resulting injury."  A claimant need not prove the existence of a contract to recover under this tort theory.  Newport, 6 F.3d at 1068; Guidry v. U. S. Tobacco Co., Inc., 188 F.3d 619, 626-27 (5th Cir. 1999).

Plaintiff has not explained how its allegations would give rise to a claim for delictual fraud or any other "fraud" theory. Plaintiff has not alleged that any defendant misrepresented a material fact to Plaintiff or that Plaintiff justifiably relied on such a misrepresentation. Accordingly, Count two should be dismissed for failure to state a claim upon which relief can be granted.

**Wrongful Concealment and Dispossession**

Count three of the complaint is titled as a claim for wrongful concealment and dispossession against all defendants.  The count consists of a single paragraph that repeats an earlier allegation that the defendants have wrongfully taken, dispossessed, re-titled, hidden and otherwise concealed assets of WMI and MSC and have refused to return those assets so that they may be liquidated to pay Plaintiff's judgment.  Complaint, ¶ 83.

Plaintiff devotes a single paragraph to support of this claim.  It does not cite any case or Code article that recognizes a cause of action called "wrongful concealment and dispossession."  Plaintiff does cite one case, <u>Dual Drilling Co. v. Mills Equipment Investments, Inc.</u>, 721 So.2d 853 (La. 1998), but without elaboration as to how that case supports the claim.  The <u>Dual Drilling</u> decision discussed the causes of action that are available under Louisiana law when a person wrongfully exerts control over another's property.  The court rejected the principle of common-law conversion and discussed three actions supported by the Civil Code that could be employed by the dispossessed owner of a corporeal movable.  Plaintiff has not explained how it, as a non-owner of the assets at issue, has a cause of action for "wrongful concealment" or any of the theories discussed in <u>Dual</u>

Drilling.  Accordingly, Count three should be dismissed for failure to state a claim upon which relief can be granted.

**Piercing the Corporate Veil**

Count four of the complaint is titled "Alter-Ego/Piercing the Corporate Veil" and is directed at all defendants.  Plaintiff adds to the allegations summarized above contentions that "defendants Morgan" have commingled corporate and shareholder funds in MSC, WMI, ALTMS and WLC.  The entities are alleged to have failed to keep separate bank accounts and records and have not held regular shareholder or director meetings.  MSC, ALTMS and WLC are alleged to be "grossly undercapitalized."  Defendants Morgan are alleged to have failed to follow statutory formalities required for incorporation and the transaction of corporate affairs.  Plaintiff concludes that the corporate veils should be pierced and that "defendants Morgan" should be held liable for the liabilities of the entities.  Complaint, ¶¶ 84-90.

Corporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for corporate debts.  Louisiana law recognizes exceptions to this limitation of liability and, in certain circumstances, permits piercing the corporate veil on an alter-ego basis. This usually involves situations where fraud or deceit have been practiced by a shareholder acting through a corporation, but fraud is not essential.  Hollowell v. Orleans Regional Hospital, L.L.C., 217 F.3d 379, 385-86 (5th Cir. 2000).

Movants attack this claim on two grounds.  They first assert that Plaintiff has made only conclusory allegations.  Because fraud is not required with respect to this claim, Rule 8(a) notice pleading is sufficient.  Plaintiff has alleged more than adequate facts to put Defendants on fair notice of the nature of this claim.

Defendants next fault Plaintiff for not alleging that Marsha, Mark or Michael Morgan are shareholders in any of the corporations.  (Movants admit that Plaintiff alleged in paragraph 62 that Gary Dwight Morgan is a holder of stock in three of the corporations.)  Plaintiff has responded with a lengthy discussion of the alter-ego doctrine, but it has not pointed to an allegation in its complaint that Marsha, Mark or Michael Morgan are shareholders in any of the relevant corporations.  The court notes what no party has:  Plaintiff alleges in paragraph 46 that: "All of the entities, WMI, MSC, WLC and ALTMS are owned and operated by GARY DWIGHT MORGAN, his wife MARSHA MORGAN, and his sons, MARK MORGAN and MICHAEL MORGAN."  See also Paragraph 50.  That allegation is sufficient to defeat the motion to dismiss on this point.

**Single Business Enterprise**

Count five of the complaint alleges that WMI and MSC have been operated as a "single business enterprise" and should be treated as such.  Plaintiff bases this contention on the same factors discussed with respect to the veil piercing claims.  Complaint, ¶¶ 91-93.

MSC argues that this effort to saddle it with debts of WMI is based on conclusory allegations.  Plaintiff will have to produce more than conclusory assertions to survive

summary judgment or trial on this claim, but its current allegations are sufficient to satisfy Rule 8(a)'s lenient standard and survive Rule 12(b)(6) review.

MSC also attacks Plaintiff's allegations throughout its pleadings that both WMI and MSC are judgment debtors on the Michigan judgment.  A copy of the judgment, attached to the first motion to dismiss, shows that it was rendered against "Webster Manufacturing, Inc., d/b/a Morgan Saw."  Morgan Saw Company, Inc. (MSC) argues that the judgment is insufficient to allow seizure of its assets.  The court cannot consider the extra-complaint document in connection with this motion to dismiss, and more information about the role (if any) that MSC played in the Michigan litigation would likely be necessary to resolve the issue. Plaintiff's allegations, which control for current purposes, contend: "Plaintiff is a judgment creditor of WEBSTER MANUFACTURING, INC. d/b/a MORGAN SAW COMPANY [WMI and MSC]."  Complaint, ¶ 7.  The single business enterprise allegations follow that contention. ¶ 8. It is not clear from the complaint or Plaintiff's memorandum whether Plaintiff takes the position that the Michigan judgment alone allows it to seize the assets of Morgan Saw Company, Inc. or whether the single business enterprise theory is necessary to reach that corporation's assets.  In either event, the allegations of the complaint are sufficient to allow the claims to go forward and be tested by more substantive means.

**Fiduciary Duty to Creditors**

Count six of the complaint is titled "Breach of Fiduciary Duties to Creditors" and is aimed at all defendants.  Plaintiff alleges that Louisiana law imposes a fiduciary duty on both a corporation and its officers, directors and shareholders toward the creditors of the

corporation that includes an obligation to see that creditors are paid.  Plaintiff adds a contention that the assets of a corporation constitute a trust fund for the payment of its debts. Plaintiff accuses Defendant of violating their fiduciary duties by not ensuring that corporate assets were used to pay corporate debt.  Complaint, ¶¶ 94-101.

A corporate shareholder or director is ordinarily not liable for the debts of the corporation.  Louisiana courts have recognized exceptions such as the alter-ego or piercing of the corporate veil theory that may yield a different result.  Louisiana courts have also recognized a fiduciary duty by a corporation towards its creditors and that the principals of the corporation may bear personal liability for breach of that duty if it is proved that there was fraud in the actions taken by the principals.  Young v. Adolph, 821 So.2d 101, 106 (La. App. 5th Cir. 2002).

Defendants argue that Plaintiff has not pleaded fraud with adequate specificity to satisfy Rule 9(b).  Plaintiff has not identified each asset that was allegedly pilfered from the corporate debtor, but it has described several categories of assets (saw machines, tools, monies, planes, race cars, buildings, land, etc.) with a relative degree of specificity. Plaintiff has  alleged with specificity the formation of ALTMS and the April 25, 2006 transaction that allegedly transferred corporate assets to ALTMS for a small consideration.  Plaintiff has also alleged that each of the Morgans was involved in those and other transactions and events described in the complaint that took place over a fairly limited time.  The allegations with respect to this count are adequate to provide the "who, what, when, where and how" of the

alleged fraud and permit the count to go forward, be explored through discovery and be tested by summary judgment or trial.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 46)** be **granted in part** by dismissing count two (fraud) and count three (wrongful concealment and dispossession) for failure to state a claim upon which relief can be granted. It is further recommended that the motion be **denied in all other respects.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 27th day of April, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE