## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| HILLMAN LUMBER PRODUCTS, INC. | CIVIL ACTION NO. 06-1204 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| WEBSTER MANUFACTURING, INC. ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

Before the Court is a Motion for Attorney Fees and Excess Costs and Expenses Beyond Those Taxable Under 28 U.S.C. § 1920 [Record Document 125], filed on behalf of the Plaintiff, Hillman Lumber Products, Inc.  Defendants and defendants' former legal counsel in this matter oppose this motion.  For the reasons stated herein, Plaintiff's motion is **DENIED.**

### FACTUAL BACKGROUND

Plaintiff, Hillman Lumber Products, Inc. ("Hillman") initiated the underlying litigation in Michigan state court after purchasing a defective commercial saw from Webster Manufacturing, Inc. d/b/a Morgan Saw Company ("Webster" or "judgment debtor").  Following a jury trial in February 2006 in Michigan state court, Plaintiff obtained a judgment against Webster in the amount of $344,497.89, together with statutory interest under Michigan state law from May 3, 2004 (the lawsuit filing date) until paid in full.  When Webster failed to satisfy the judgment in a timely fashion, Plaintiff took affirmative actions to collect thereon.  Specifically, Plaintiff made the judgment executory in the state of Louisiana, where Webster's business was physically located, and had a writ of *fieri facias* issued.  The writ directed the Sheriff of Webster Parish, Louisiana to seize and sell all

assets of Webster found upon the seized premises.  At the time of the seizure, however, the Sheriff was presented with a "Bill of Sale" indicating Webster was no longer in operation and that   Ark-La-Tex Mill Supply, Inc. a/k/a ArkLaTex Mill Supply, Inc. ("ArkLaTex") had acquired all of the judgment debtor's assets.

On July 17, 2006, after additional actions taken to satisfy the Michigan state court judgment proved unsuccessful, Plaintiff filed a Complaint in the Western District of Louisiana against Defendants Webster Manufacturing, Inc., Morgan Saw Company, Inc, Ark-La-Tex Mill Supply, Inc. a/k/a ArkLaTex Mill Supply, Inc., Gary Dwight Morgan, Marcia Morgan, Mark Morgan, Michael Morgan, and Webster Lumber Corporation, seeking to revoke the transfer of assets from Webster to ArkLaTex and to have those assets returned to the judgment debtor for seizure and sale.  Plaintiff alleged the Defendants had transferred, encumbered, and concealed assets of the judgment debtor to make the judgment debtor appear insolvent in an effort to avoid collection of the judgment.  [Record Document 1].

On April 2, 2010, at the conclusion of a week-long bench trial, the Court ruled in favor of Hillman on the revocatory action, finding the transfer of assets from Webster to ArkLaTex by virtue of the April 25, 2006 Bill of Sale was "fraudulent" and "subject to revocation under Article 2036 of the Louisiana Civil Code."[1]  See Trial Transcript, Day 5.

---

[1]Plaintiff's legal cause of action for the tort of "fraud" was dismissed early in this litigation for failure to allege "that any defendant misrepresented a material fact to Plaintiff or that Plaintiff justifiably relied on such a misrepresentation."  See Record Documents 52, 55.  Thus, to clarify, the term "fraudulent" as used by the Court in its Judgment refers not to the legal cause of action of "fraud" (for which Defendants can no longer be held liable), but to the unconscionable actions and business dealings contrived by Defendants for the sole purpose of averting their obligations under the Michigan state judgment.

The Court also found that through various closely-held, family-owned corporations—Morgan Saw Company, Inc., Webster Manufacturing, Inc., Ark-La-Tex Mill Supply, Inc., and Webster Lumber Corporation—defendants Gary Morgan and Mark Morgan had engaged in a post-judgment elaborate family corporate shell game involving cash and assets with the intent to defraud Plaintiff.  See id.  The Court ordered that all assets of Morgan Saw Company, Inc., Webster Manufacturing, Inc., Ark-La-Tex Mill Supply, Inc., Webster Lumber Corporation, Gary Morgan and Mark Morgan be seized and sold to satisfy the 2006 Michigan state court judgment rendered in favor of Plaintiff.

Thereafter, Plaintiff filed a Motion for Attorneys' Fees and For Excess Costs and Expenses Beyond Those Taxable Under 28 U.S.C. § 1920.  [Record Document 125].  Plaintiff requests it be permitted to (1) submit an application for its attorneys' fees pursuant to (a) the inherent power of the court to award attorneys' fees against the opposing party and (b) 28 U.S.C. § 1927 on the basis that "defendants' attorneys unreasonably and vexatiously multiplied these proceedings in numerous respects, made numerous unnecessary filings and asserted frivolous defenses, obstructed discovery and committed other acts to attempt to avoid collection of the valid and enforceable Michigan state court judgment"; and (2) pursuant to 28 U.S.C. § 1927, submit an application for excess costs and expenses beyond those permitted by 28 U.S.C. § 1920, "as those additional costs and expenses were caused to be incurred due to defendants' attorneys' efforts to unreasonably and vexatiously multiply these proceedings in numerous respects, making numerous unnecessary filings and frivolous defenses, obstructing discovery and committing other acts to attempt to avoid collection of the valid and enforceable Michigan state court judgment."  Id.

## LAW AND ANALYSIS

A.   **28 U.S.C. § 1927**

Title 28, United States Code, Section 1927 provides, in its entirety:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to the parties." Bausch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995).  The Supreme Court has observed that "§ 1927 does not distinguish between winners and losers or between plaintiffs and defendants." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).  The statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claims or defenses.

Nevertheless, courts should remain mindful that sanctions under 28 U.S.C. § 1927 are "punitive in nature" and should only be awarded if a party "multiplies the proceedings...unreasonably and vexatiously." Bryant v. Military Dept. of Miss., 597 F.3d 678, 694 (5th Cir. 2010) (citing Religious Tech Ctr. v. Liebreich, 98 Fed.Appx. 979, 983 (5th Cir. 2004); see also, Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994) (§ 1927 must be strictly construed so as "not to dampen the legitimate zeal of an attorney in representing his client").  This standard, which "focuses on the conduct of the litigation and not on the merits," requires "clear and convincing evidence 'that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper

motive, or reckless disregard of the duty owed to the court.'" Id. (quoting Procter & Gamble

Co. v. Amway Corp., 280 F.3d 519, 525-26 (5th Cir. 2002)) (emphasis in original).

Plaintiff contends this case "is replete with examples of bad faith, vexatious actions

that were without merit and interposed to create delays and fees and costs/expenses to

plaintiff."  [Record Document 125, p.14].  With respect to the conduct of Defendants'

attorneys, Plaintiff asserts, among other actions, that:

- At the request of Gary Morgan, attorney John Slattery, Jr., prepared the "Bill of Sale" and Minutes of Special Meeting of the judgment debtor (which Minutes ultimately conflicted with other corporate minutes drafted by the debtor);

- At the request of Gary Morgan, attorney Paul Kitchens filed a petition in Louisiana state court on behalf of Webster and ArkLaTex seeking injunctive relief, but the request for a TRO was denied;

- Mr. Kitchens later prepared the incorporation papers for ArkLaTex and assisted Defendants  in setting up business operations for ArkLaTex;

- Neither Defendants nor any attorney made any efforts to comply with the July 20, 2006 court ordered seizure;

- Defendants' trial attorneys, Julio Rios and Richard Hiller (hereinafter "defense counsel"), asserted numerous baseless positions and defenses throughout the litigation;

- Defense counsel contested facts in the Pretrial Order which they knew or upon reasonable inquiry should have known were incontestable;

- Defense counsel demanded Plaintiff appear in Louisiana for a discovery deposition which covered largely irrelevant topics;

- Defense counsel objected to and obstructed discovery of tax returns and other financial information from CPA Don Teague;

- Defense counsel coached Defendants Gary Morgan and Marcia Morgan to untruthfully answer "do not know," "do not recall," assertion of privileges, etc.

See Id. at pp.14-22.

In addition, Plaintiff contends defense counsel "took an approach of naming no witnesses and listing no exhibits and suggested that plaintiff's counsel could not prove its case from defendants' own records," and that such approach was "costly and time-consuming" and "wasted judicial resources." Id. at p.22.

The Court agrees with the position taken by Defendants and defense counsel that the overall tenor of Plaintiff's motion essentially suggests that the Defendants (through their counsel) should not have refuted Plaintiff's claims or otherwise forced Plaintiff to satisfy its burden of proof on such claims. Plaintiff's assertions of so-called "bad faith" on the part of attorneys John Slattery and Paul Kitchens relate to their involvement with Defendants *prior* to this litigation, and the assertions of "bad faith" on the part of trial counsel Julio Rios and Richard Hiller are largely speculative and remain unsubstantiated. See supra. Furthermore, the record simply does not support Plaintiff's contention that defense counsel multiplied the proceedings "unreasonably and vexatiously." Instead, the record demonstrates defense counsel zealously represented their clients, even receiving favorable rulings from the Court. For instance, prior to trial on the merits, the Court granted Defendants' motion to dismiss Plaintiff's claims of fraud and wrongful concealment and dispossession, and on the fourth day of trial, the Court dismissed Marcia Morgan and Michael Morgan as defendants. See Record Documents 52, 55, 120. Because § 1927 focuses on the conduct of the litigation and not on the merits of the underlying claims, it is irrelevant whether some defensive assertions and theories ultimately proved meritless. See Bryant, 597 F.3d at 694.

As an additional matter, the Court notes that Mr. Hiller admitted he engaged in churlish pretrial conduct by letter in which he apologized both to opposing counsel and the Court.  Nevertheless, the Court believes it would be unwise and unjust to sanction defense counsel under § 1927 as a matter of policy.  Plaintiff filed its Complaint nearly four years before this case proceeded to trial.  As a result of various discovery disputes and delays from *both* parties (and their counsel),[2] the first Scheduling Order was not issued until two years after the Complaint was filed.  <u>See</u> Record Document 80.  The trial date was later continued on two occasions, and *Plaintiff's counsel*, David Szwak, admitted to the Court during the January 12, 2010 status conference that he was personally at fault for the difficulties in drafting a final joint pretrial order and accepted full responsibility for the parties' failure to be fully prepared for trial. <u>See</u> Record Documents 90, 96, 98. Moreover, the generally uncooperative pretrial conduct of *all* counsel necessitated a telephone conference with the Court, at which time the Court instructed counsel that sanctions would be issued if such conduct continued. <u>See</u> Record Document 100.  Thus, to the extent the proceedings in this matter may have been "unreasonably and vexatiously" multiplied or delayed, the Court finds that any such delays were the result of the zealous, often contentious and generally less than genteel conduct by counsel for *both* parties. Consequently, sanctions against defense counsel under § 1927 are not warranted in this matter.

---

[2]Plaintiff's counsel asserts various example of "bad faith" occurring during the discovery process, particularly that defendants and their counsel intentionally withheld discovery responses.  Interestingly, however, Plaintiff's counsel fails to acknowledge he never propounded any written discovery requests to defendants or defendants' counsel.

**B.      Inherent Power of the Court**

Although the "American Rule" provides that each litigant is responsible for paying his or her own attorneys' fees,[3] see Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), federal courts have inherent power to award reasonable attorneys' fees and costs to the prevailing party for the "willful disobedience of a court order," Id., 421 U.S. at 258, 95 S.Ct. at 1622 (quoting Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 426-28, 43 S.Ct. 458, 465-66, 67 L.Ed. 719 (1923)), or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id., 421 U.S. at 258-59, 95 S.Ct. at 1622 (quoting F.D. Rich Co., Inc. v. U.S. for the Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)); see also, Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991).  As the Supreme Court stated in Chambers:

> The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Chambers, 501 U.S. at 46, 111 S.Ct. at 2133 (internal quotations and citation omitted).

A district court must exercise caution in invoking its inherent power to award attorneys' fees and should do so only when it finds that "fraud has been practiced upon it,

---

[3]The rationale underlying the "American rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." Fleischman Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

or that the very temple of justice has been defiled." Id., 501 U.S. at 46, 111 S.Ct. at 2133; see also, Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir. 1995) (the threshold for the use of inherent sanctioning power is high and must be exercised "with restraint and discretion").  The only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent powers is, as noted above, that awards under § 1927 can be made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).  For the reasons previously announced, an award of attorneys' fees against defense counsel is not warranted.  Thus, the Court need only determine whether to exercise its inherent power to issue an award of attorney's fees against the corporate and individual Defendants.

In its Motion for Attorneys' Fees and Costs [Record Document 125], Plaintiff cites numerous actions of the Defendants which Plaintiff alleges were conducted in "bad faith" and "were without merit and interposed to create delays and fees and costs/expenses." However, the "bad faith, vexatious actions" alleged by Plaintiff are, in large part, the same actions that formed the basis for this litigation.[4]  See Id.  At the conclusion of the bench

_____

[4]The examples of "bad faith, vexatious actions" alleged by Plaintiff include the following actions: defendant Mark Morgan presented the Sheriff with a "Bill of Sale"; defendants Mark and Gary Morgan claimed the judgment debtor had no assets and was no longer in operation; defendants transferred all assets and monies of Webster to ArkLaTex for the sole purpose of defrauding the judgment creditor; Webster continued doing business in its name after the transfer of assets to ArkLaTex, etc.  See Record Document 125.  These actions, among others, were the same actions of defendants which lead to the filing of Plaintiff's revocatory action in this Court.  See Record Document 1.

trial, the Court essentially determined that defendants Gary and Mark Morgan had acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" in the formation and operation of their family owned and operated business entities[5] and, therefore, ruled in favor of Plaintiff on the underlying substantive claims.  But contrary to Plaintiff's assertion, the Court's ruling on the merits does <u>not</u> support an award of attorneys' fees in this matter. An award of attorneys' fees under the "bad faith" exception " is designed to punish the abuse of judicial process rather than the original wrong [underlying the action]." <u>Towerridge, Inc. v. T.A.O., Inc.</u>, 111 F.3d 758, 765-66 (10th Cir. 1997) (quoting <u>Shimman v. Int'l Union of Operating Eng'rs</u>, 744 F.2d 1226, 1232 n.9 (6th Cir. 1984) (<i>en banc</i>), <u>cert. denied</u>, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985)); <u>accord</u> <u>Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist.</u>, 103 F.3d 1422, 1437 (8th Cir. 1997) ("the district court's inherent power to award attorney fees as a sanction for bad faith conduct does not extend to pre-litigation conduct"); <u>Guevara v. Maritime Overseas Corp.</u>, 59 F.3d 1469, 1502-03 (5th Cir. 1995) (<i>en banc</i>), <u>cert. denied</u>, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996) (attorney's fees can be awarded to a prevailing party only when his opponent has engaged in bad-faith conduct during litigation).  In determining whether a litigant acted in "bad faith," the court may consider conduct occurring both prior to and during the litigation, but an award of attorneys' fees cannot be based <i>solely</i> on the conduct that led

---

[5]Specifically, the Court found that the transfer of assets from Webster Manufacturing, Inc. To Ark-La-Tex Mill Supply, Inc., by virtue of the Bill of Sale executed on April 25, 2006 to be "fraudulent" and "subject to revocation under Article 2036 of the Louisiana Civil Code.  <u>See</u> Trial Transcript, Day 5.  In addition, the Court found that Gary Morgan and Mark Morgan had "breached their fiduciary duties" and "engaged in an elaborate corporate shell game with the intent to defraud the judgment creditor."  <u>Id.</u>

to the substantive claim.  <u>Lamb</u>, 103 F.3d at 1435; <u>McLarty v. United States</u>, 6 F.3d 545, 549 (8th Cir. 1993); <u>Perales v. Casillas</u>, 950 F.2d 1066, 1071 (5th Cir. 1992).

The bad-faith exception to the American rule "is not a punitive award in the 'tort' sense of punishing the underlying conduct that gives rise to a plaintiff's claim."  <u>Guevara</u>, 59 F.3d at 1503.  As Justice Kennedy emphatically observed in his dissenting opinion in <u>Chambers</u>:

> . . . [I]t is impermissible to allow a District Court acting pursuant to its inherent authority to sanction such prelitigation primary conduct.  A court's inherent authority extends only to remedy abuses of the judicial process. . .
>
> . . . *When a federal court, through invocation of its inherent powers, sanctions a party for bad-faith prelitigation conduct, it goes well beyond the exception to the American Rule and violates the Rules careful balance between open access to the federal court system and penalties for the willful abuse of it.*

<u>Chambers</u>, 501 U.S. at 74, 111 S.Ct. at 2148 (Kennedy, J., dissenting) (emphasis added).

The actions of Defendants underlying Plaintiff's substantive claims were in fact fraudulent and reprehensible, and the Court emphasizes that it in no way condones the prelitigation course of conduct by the individual and corporate Defendants.  Nevertheless, the Court is unable to identify any "bad-faith actions" of Defendants that are not completely intertwined with the merits of Plaintiff's underlying substantive claims.  To hold otherwise would essentially impose an award of attorneys' fees for all plaintiffs who prevail on the merits of a revocatory action, an award which has not been authorized by Louisiana state

law.[6]  See infra.  Accordingly, the Court declines to exercise its inherent power to award attorneys' fees against Defendants in this matter.

C.    State Law

In its final argument, Plaintiff asserts it should be awarded attorneys' fees pursuant to Michigan state law.[7]  [Record Document 125].  Plaintiff acknowledges Louisiana substantive law applied to its revocatory action, but nevertheless claims Louisiana conflicts analysis provides for application of Michigan law with respect to attorneys' fees.[8]  [Record Document 167].  The Court disagrees.  It is well-established that an award of attorneys'

───────────────

[6]It has similarly been noted that "[a] defendant found liable for fraud, for instance, would automatically be guilty of bad faith with respect to the underlying cause of action, thus abrogating the American Rule in all successful fraud actions.  Some complete abrogation is not the purpose of the bad faith exception."  10 Moore's Federal Practice § 54.171(2)(c)(ii), p.54-266.

[7]Section 600.2591(1) of Michigan Compiled Laws provides:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

A claim or defense is "frivolous" if (1) "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party," (2) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or (3) "[t]he party's legal position was devoid of arguable legal merit."  M.C.L.A. § 600.2591(3)(a).

[8]Specifically, Plaintiff points to Article 3547 of the Louisiana Civil Code, which provides that the law of this state shall not apply if, "from the totality of the circumstances of an exceptional case. . .that the policies of another state would be more seriously impaired if its laws were not applied to the particular issue."  Because Michigan state law support recovery of attorney's fees and litigation expenses so as to fully compensate victims for their damages, Plaintiff contends Michigan state law would be more seriously impaired if its laws were not applied.

Page 12 of 13

fees is governed by the law of the state whose substantive law is applied to the underlying claims.  Kona Tech. Corp. v. Southern Pac. Transp. Co., 225 F.3d 595, 614 (5th Cir. 2000); Exxon Corp. v. Burglin, 4 F.3d 1294, 1302 (5th Cir. 2003); Kucel v. Walter E. Heller & Co., 813 F.2d 67, 73 (5th Cir. 1987).  The conflicts analysis urged here does not serve as an exception to this rule.  Consequently, in the absence of a state statute providing for an award of attorneys' fees in this matter, Plaintiff is not entitled to an award of attorneys' fees under Louisiana law.

## CONCLUSION

Upon due consideration of the parties' motions and the applicable law,

**IT IS ORDERED** that the Plaintiff's Motion for Attorney Fees and Excess Costs and Expenses Beyond Those Taxable Under 28 U.S.C. § 1920 [Record Document 125] be and is hereby **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 16th day of July, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE